UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PETERSEN-DEAN INC.,<br>        Petersen-Dean,<br>    v.<br>DIETER FOLK, et al.,<br>        Defendants. | Case No. 15-cv-05522 NC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**<br><br>Re: Dkt. No. 33 |

Defendants move to dismiss Petersen-Dean's Lanham Act claims, RICO claims, and all claims against Wendi Zubillaga. Petersen-Dean alleges that defendants copied, retained, and are currently using material from Petersen-Dean's corporate hard drives, and that this material is protected by copyright and trademark laws. Defendants are former employees of Petersen-Dean who have formed a competing business. The defendants' motion to dismiss is GRANTED in part and DENIED in part.

## I. BACKGROUND

In 2009, Petersen-Dean purchased Old Country Roofing and Solar ("OCR"), from defendant, Dieter Folk. Dkt. No. 1, Complaint ¶ 16. Petersen-Dean alleges that Dieter Folk established a sole proprietorship called JAJ Roofing in 1992 or earlier, which was the registered owner of a California contractor's license. Compl. ¶ 17. JAJ Roofing was the supervising contractor for OCR's jobs. Compl. ¶ 17. The purchase agreement between OCR and Petersen-Dean includes the sale of all of OCR's assets, including trade secrets,

Case No. 15-cv-05522-NC

trademarks, copyrights and intellectual property. Compl. ¶ 16. However, it does not explicitly refer to JAJ Roofing name. Keegan Decl. at ¶ 4, Exh. B.[1]

Defendants Dieter Folk, Jeffrey Maxfield and Bryce Robicheau were OCR employees, and they joined Petersen-Dean after the sale. Compl. ¶ 18. Dieter Folk signed an initial five-year term employment contract with Petersen-Dean running through January 15, 2014. Compl. ¶ 18. The employment agreement contained a non-competition clause valid until January 15, 2014, and a non-disclosure clause, which barred Folk from disclosing Petersen-Dean's confidential information until January 15, 2019 (five years after the employment period ended). Compl. ¶ 20. Petersen-Dean and Folk entered into an extension of Folk's employment agreement in December 2013, for another five years. Compl. ¶ 21.

Petersen-Dean alleges that in January 2015, defendants began contacting Petersen-Dean's employees, customer, vendors, and other contacts and conveyed incorrect statements about Petersen-Dean's financial status. Compl. ¶ 22. On April 9, 2015, Petersen-Dean terminated Wendi Zubillaga's employment. Compl. ¶ 7. From April 9, 2015, to June 1, 2015, defendants each resigned from Petersen-Dean. Compl. ¶ 23. On May 7, 2015, JAJ Roofing Inc. was registered with the California Secretary of State. Compl. ¶ 24.

Petersen-Dean alleges that defendants took a large amount of copyrighted material in both electronic and hard copy formats and some electronic hardware before they resigned. Compl. ¶ 25.

Subsequently, Citadel, the name defendants' new business operates under, used the JAJ Roofing sole proprietorship's contractor's license number on its commercial advertisement. Compl. ¶ 59. Petersen-Dean alleges that Citadel misled potential customers, and built up its competing business through use of Petersen-Dean's trademark

---

[1] Although the purchase agreement was not attached to the complaint, the Court finds it proper to consider the purchase agreement because it is incorporated by reference in the complaint. Fed. R. Civ. P. 12(d). No party disputes the authenticity of the purchase agreement attached to Keegan's declaration at Exhibit B.

Case No. 15-cv-05522 NC  2

1    and copyrighted materials. Compl. ¶¶ 40, 63.

2        On December 2, 2015, Petersen-Dean filed this lawsuit alleging a variety of claims
3    against Citadel and individual defendants Folk, Maxfield, Robicheau, and Zubillaga. The
4    complaint includes six causes of actions: (1) willful copyright infringement; (2)
5    contributory copyright infringement; (3) Computer Fraud and Abuse Act ("CFAA")
6    violation, 18 U.S.C. §1030; (4) Lanham Act § 43(a), 15 U.S.C. § 1125(a) Violations; (5)
7    aiding and abetting federal law violations; and (6) Racketeer Influenced and Corrupt
8    Organization Act ("RICO"), 18 U.S.C. § 1962 (c). Prior to this lawsuit, the parties were
9    engaged in a parallel state action in Alameda County Superior Court. Compl. ¶ 28. On
10   December 15, 2015, defendants moved to dismiss Petersen-Dean's Lanham Act claims,
11   RICO claims, and all claims against individual defendant Wendi Zubillaga. Dkt. No. 33.

12       All parties have consented to the jurisdiction of a magistrate judge. Dkt. No. 20, 13.

## II. LEGAL STANDARD

14       A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal
15   sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). On a
16   motion to dismiss, all allegations of material fact are taken as true and construed in the
17   light most favorable to the non-movant. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-
18   38 (9th Cir. 1996). The Court, however, need not accept as true "allegations that are
19   merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re*
20   *Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

21       Although a complaint need not allege detailed factual allegations, it must contain
22   sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its
23   face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible
24   when it "allows the court to draw the reasonable inference that the defendant is liable for
25   the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

26       If a court grants a motion to dismiss, leave to amend should be granted unless the
27   pleading could not possibly be cured by the allegation of other facts. *Lopez v. Smith*, 203
28   F.3d 1122, 1127 (9th Cir. 2000).

Case No. 15-cv-05522 NC        3

## III.  DISCUSSION

Defendants move to dismiss Petersen-Dean's (A) Lanham Act claim; (B) RICO claim; and (C) claims against defendant Wendi Zubillaga.  The Court will address each in turn.

### A.  Lanham Act Claims

To allege trademark infringement, Petersen-Dean must allege: (1) that it has a valid, protectable trademark, and (2) that defendant's use of the mark is likely to cause confusion. *Applied Info. Scis. Corp. v. eBay, Inc.*, 511 F.3d 966, 969 (9th Cir. 2007).  Defendants argue (1) that JAJ Roofing cannot be a valid trademark because it contains personal marks; (2) JAJ Roofing was not part of the sale; and (3) JAJ Roofing was not a protected mark because it was never used in commerce.

The party who first uses a trademark in commerce has priority to that mark over other users. *Hana Fin., Inc. v. Hana Bank*, 135 S. Ct. 907, 909 (2015).  Trademark ownership is not acquired by federal or state registration; rather, ownership rights flow only from prior use in the market. *Grupo Gigante SA De CV v. Dallo & Co.*, 391 F.3d 1088, 1093 (9th Cir. 2004).  The owner of a trademark may lawfully transfer the right to use the trademark to the purchaser with the good will of the business in which the mark is used.  15 U.S.C. § 1060.

Subsequent to establishing ownership of a mark, a Lanham Act violation requires "use of the mark in commerce" that "is likely to cause confusion" to a valid, protectable trademark of Petersen-Dean's.  15 U.S.C. § 1114.  "The purpose of a trademark is to help consumers identify the source, but a mark cannot serve a source-identifying function if the public has never seen the mark and thus is not meritorious of trademark protection until it is used in public in a manner that creates an association among consumers between the mark and the mark's owner." *Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1051 (9th Cir. 1999)

Petersen-Dean alleges that it purchased from OCR all relevant components of the business, which included the JAJ Roofing mark.  Petersen-Dean also alleges that Citadel is

1  now using the JAJ Roofing mark and the contracting license associated with it in
2  advertisements to the public.  Drawing all inferences in favor of plaintiff, the complaint
3  sufficiently states that JAJ Roofing and the contracting license attached to it were part of
4  the OCR brand since 1992.  Petersen-Dean alleges its ownership of the JAJ Roofing
5  branch as well as a likelihood of confusion if both Petersen-Dean and Citadel use the same
6  mark.

7  Defendants' arguments that JAJ Roofing contains personal marks, that it was not
8  part of the sale, or that it was never used in commerce are defenses to Petersen-Dean's
9  trademark claims.  To evaluate them, the Court would be required to consider material
10  outside the pleadings and make factual findings.  Thus, the Court concludes that taking
11  Petersen-Dean's complaint as true, Petersen-Dean has sufficiently alleged ownership of the
12  trademark.

### B.    RICO Claims

Liability under RICO, 18 U.S.C. § 1962(c), requires (1) the conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.  *Smith v. Jackson*, 84 F.3d 1213, 1217 (9th Cir. 1996).  Generally, RICO provisions must be construed liberally in keeping with the broad remedial purposes of the statute.  *Uthe Tech. Corp. v. Aetrium, Inc.*, 808 F.3d 755, 759 (9th Cir. 2015).  "The enterprise is an entity, for present purposes a group of persons associated together for a common purpose of engaging in a course of conduct.  The pattern of racketeering activity is, on the other hand, a series of criminal acts as defined by the statute."  *United States v. Turkette*, 452 U.S. 576, 583 (1981).  In addition to these elements, Petersen-Dean must plead that defendants' violation was both the but for and proximate cause of a concrete financial injury.  *Resolution Trust Co. v. Keating*, 186 F.3d 1110, 1117 (9th Cir. 1999).

Defendants argue that "because Petersen-Dean's RICO claim is clearly a restatement of its infringement claims, Petersen-Dean cannot allege a predicate act as required to state a claim under RICO."  Dkt. No. 33 at 10.  Specifically, defendants challenge the fourth requirement that a RICO claim must include racketeering activity.

Case No. 15-cv-05522 NC           5

### 1. Racketeering Activity

Racketeering activity requires predicate acts. Here, Petersen-Dean alleges the predicate acts are mail and wire fraud under 18 U.S.C. §§ 1341 and 1343. Both mail and wire fraud allegations are subject to the pleading requirements of Rule 9(b). *Edwards v. Marin Park*, *Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004). Rule 9(b) requires that a Petersen-Dean allege the time, place, and manner of each predicate, plus the role of each defendant in each scheme. Fed. R. Civ. P. 9(b); *Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 405 (9th Cir. 1991). The circumstances constituting the alleged fraud must be specific enough to give defendants notice of the particular misconduct, so that they can defend against the charge. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). Under California law, the "indispensable elements of a fraud claim include a false representation, knowledge of its falsity, intent to defraud, justifiable reliance, and damages." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003).

Petersen-Dean's theory of RICO violation is that Citadel is the enterprise which committed a pattern of racketeering activity, mail and wire fraud, by communicating false information to prospective consumers and employees that the "copyrighted material" and JAJ brand were owned by Citadel. The complaint sufficiently sets out how each defendant is implicated in the scheme. However, the complaint does not state with specificity what facts were being misrepresented or to whom they were being misrepresented.

The Court agrees with defendants that Petersen-Dean has restated the copyright allegation as the predicate act, without sufficiently alleging facts giving rise to fraud.

### C. Claims Against Wendi Zubillaga

Under Rule 8, the purpose of the complaint is to give a defendant fair notice of the claims against her and the grounds upon which the complaint stands. *Swierkiewicz*, 534 U.S. at 512. To meet this standard, Petersen-Dean must allege facts sufficient to put each defendant on notice. "Failure to indicate which defendant was allegedly responsible for which wrongful act and to provide well-pleaded factual allegations in support of each

1   cause of action renders the complaint deficient under Rule 8." *Corazon v. Aurora Loan Servs., LLC*, No. 11-cv-00542 SC, dkt. no. 16, 2011 WL 1740099, at *5 (N.D. Cal. May 5, 2011).

Defendants argue that Petersen-Dean has failed to state sufficient facts on its complaint to support any of the claims against Wendi Zubillaga, and therefore move to dismiss all claims against her. All causes of action in the complaint are directed to all defendants. The Court addresses each claim separately.

### 1. Willful Copyright Infringement

The Copyright Act of 1976 provides in relevant part that the owner of copyright under this title has the exclusive rights to do and to authorize any of the following: "to reproduce the copyrighted work in copies or phono records; . . . to distribute copies or phono records of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending. . . ." 17 U.S.C. § 106. Anyone may engage in copyright infringement when the person "violates any of the exclusive rights of the copyright owner." 17 U.S.C. § 501(a). To establish copyright infringement, a Petersen-Dean must prove two elements: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991).

The complaint alleges that Petersen-Dean owns the copyrights in relevant material and defendants knew about the Petersen-Dean's ownership, yet copied, reproduced, and used the material order to promote Citadel's interest. Compl. ¶ 36. Petersen-Dean alleges that the copying was in conjunction defendants' resignations from April 9, 2015 to June 1, 2015 . Compl. ¶ 23. However, Zubillaga was terminated for cause on April 9, 2015. Compl. ¶ 7. The complaint is unclear whether Petersen-Dean alleges that Zubillaga reproduced copyrighted work. Therefore, Petersen-Dean's willful copyright infringement allegations against Zubillaga are vague, and without more specificity, the Court cannot determine the scope of Zubillaga's liability. This claim is dismissed against Zubillaga with leave to amend.

Case No. 15-cv-05522 NC             7

### 2. Contributory Copyright Infringement

One infringes contributorily by intentionally inducing or encouraging direct infringement, and infringes vicariously by profiting from direct infringement while declining to exercise a right to stop or limit it. *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005). Therefore, a Petersen-Dean must assert 1) knowledge of the infringing activity; and 2) act of inducing the infringer or 3) that the defendant, while profiting, chose not to stop the infringer. *Id.*

As to contributory liability, Petersen-Dean's theory of liability is that Citadel knew of and encouraged the copyright infringement. Petersen-Dean asserts that "All Defendants have a common financial interest in the competing business, which relies on Petersen-Dean's Copyrighted Material to succeed." Compl. ¶ 43. The complaint also alleges that Zubillaga is a partner at Citadel. Compl. ¶ 7. Drawing all inferences in favor of Petersen-Dean, the Court finds that Petersen-Dean has sufficiently alleged the contributory infringement claim against Zubillaga.

### 3. Computer Fraud and Abuse Act Violations

The CFAA claim requires Petersen-Dean to allege defendants' 1) unauthorized or exceeded access to a computer; and 2) intent to defraud or exceed authorization.

Here, Petersen-Dean asserts that defendants continued to access protected computers after their employment ended. Compl. ¶ 53. The complaint sets forth relevant facts that individual defendants Bryce Robicheau and Dieter Folk accessed Petersen-Dean's computers and data after their employment ended. Compl. ¶¶ 25, 53. However, Petersen-Dean fails to show any factual allegation as to how Zubillaga violated CFAA and exceeded her authorized access.

As to the second element, the complaint states that "some defendants directly copied electronically stored information, another secured legal real states, and others lied to Petersen-Dean's customers and employees about its financial condition." Compl. ¶ 27.

The complaint does not state with specificity what actions Zubillaga took to access a computer without authorization. This claim is dismissed against Zubillaga with leave to

Case No. 15-cv-05522 NC           8

amend.

#### 4. Lanham Act § 43 (a), 15 U.S.C. § 1125 (A) Violations

As outlined above, the Lanham Act claims are sufficiently pled.

#### 5. Aiding and Abetting Federal Law Violations

Petersen-Dean alleges that defendants aided and abetted the federal law violations by being willfully blind to the unlawful acts. The willful blindness doctrine requires that: (1) the defendant subjectively believe that there is a high probability that a fact exists; and (2) the defendant take deliberate actions to avoid learning of that fact. *Glob.-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 769-70 (2011). Thus, a willfully blind defendant is one who takes deliberate actions to avoid confirming a high probability of wrongdoing and who can almost be said to have actually known the critical facts. *Id.* at 2070−71. The determination of willfulness under the applicable standards is generally a question of fact for the jury. *Hearst Corp. v. Stark*, 639 F. Supp. 970, 980 (N.D. Cal. 1986).

The complaint sets forth that "defendants and each of them knew or were reckless or willfully blind in refusing or failing to know that one or more of the other defendants were committing and/or continuing to commit multiple violations." Compl. ¶ 72. Petersen-Dean asserts that "defendants are jointly and severally liable for these acts because they formed an agreement, express and implied, among themselves to violate" the law and they "an equal right to direct the conduct of the group so they are equally in the cost of that leadership." Compl. ¶ 73. The Court finds that the alleged facts are sufficient to plead a claim of aiding and abetting federal violations against Zubillaga, and denies defendants' motion for this claim.

#### 6. RICO Claims

The Court dismisses the RICO claims in their entirety, as discussed above.

Case No. 15-cv-05522 NC                9

## IV. CONCLUSION

The Court GRANTS IN PART and DENIES IN PART defendants' motion to dismiss as follows:

1. The motion is DENIED as to the Lanham Act claim.
2. The motion is GRANTED as to the RICO claim. This claim is dismissed with leave to amend.
3. The willful copyright infringement and CFAA claims against Wendi Zubillaga are dismissed with leave to amend.
4. Petersen-Dean has 14 days to amend the complaint.

**IT IS SO ORDERED.**

Dated: July 22, 2016 _____
NATHANAEL M. COUSINS
United States Magistrate Judge